FILED
2020 SEP 25 AM 9:06
CLERK
U.S. DISTRICT COURT

Russell Greer
7901 South 3200 West
P.O. Box 152
West Jordan, Utah 84088
801-895-3501
russellgreer30business@gmail.com
Pro Se Litigant

---

## IN THE UNITED STATES DISTRICT COURT DISTRICT FOR

## THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| **RUSSELL G. GREER,** | **PLAINTIFF'S MEMORANDUM IN SUPPORT FOR PRELIMINARY INJUNCTION** |
| Plaintiff | |
| v. | |
| **JOSHUA MOON,** publisher of the website Kiwi Farms, **and KIWI FARMS**, a website | Case No.: 2:20-cv-00647 |
| Defendants | Judge Tena Campbell |

1

**Table of Contents**

Table of Authorities........................................................ 3

Introduction…………………………………………………4

Argument. . . . . . . . ……………………………………4

1.   Likelihood of Success. . . …………………………....5

2.   Plaintiff Will Suffer Injury without Injunction…….7

3.   Injunction will not Harm Others…………………..8

4.   Public interest……………………………………..8

Conclusion…………………………………………………9

Request for Injunction…………………………………9

## Table of Authorities

*Resolution Trust Corp. v. Cruce,* 972 F.2d 1195 (10th Cir. 1992).

*Gersh v. Anglin,* 353 F. Supp.3d 958 (D. MT 2018)

*Gershwin Publishing Corp. v. Columbia Artists Management*, 443 F.2d 1159 (2nd Cir. 1971).

*A&M Records v. Napster, Inc.* (2001)

*Blumenthal v. Drudge,* 992 F. Supp. 44 (D.D.C. 1998)

*Religious Technology Center v. Netcom On-Line Communications,* 907 F. Supp. 1361 (N.D. California 1995)

*Snyder v. Phelps,* 580 F. 3d 206 (2011)

*United States v. Ackell* (1st Cir. 2018)

*Limiting Tort Liability for Online Third Party Content Under Section 230 of the Communications Decency Act.*

*Zeran v. AOL and the Effect of Section 230 of the Communications Decency Act Has Upon Liability for Defamation on the Internet.* Sheridan. (1997).

*The 1996 Law that Made the Web is in the Crosshairs.* Fast Company. (2018).

*Owner of Notorious 8Chan Site in Bid to Deflect Blame for role in Christchurch mosque terror attacks.* New Zealand Herald (2018)

## INTRODUCTION

Plaintiff Greer believes that he can succeed on all 5 claims against Defendants, however, he acknowledges that his copyright infringement claim is his strongest, as the *Communications Decency Act* does not protect against  contributory copyright infringement. Greer will show that the Communications Decency Act was not intended to shield Moon on the other claims.  And lastly, given the level of notoriety that Defendants have received, a preliminary injunction would be in the public interest, in the form of a complete freeze. If that is not granted, then an alternative request that Greer's section be taken off the site, as he has demonstrated harm.

## ARGUMENT

Four factors govern temporary restraining orders and preliminary injunctions:

 To warrant preliminary injunctive relief, the moving party must show (1) he [or she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury ... outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits. *Resolution Trust Corp. v. Cruce,* 972 F.2d 1195 (10th Cir. 1992).

The main basis for Greer's argument for a preliminary injunction is that Greer has suffered infringement and harassment at the hands of Defendants. Just as recently as Thursday, September 17th, a user on Moon's site left a nasty voice message on Greer's phone and bragged that everybody on the site was watching Greer's criminal court hearing. This is a never-ending pattern of harassment that is stemming from Moon's site and Moon has knowledge of the activities and the infringement. *Gersh v. Anglin,* 353 F. Supp.3d 958 (D. MT 2018) (Holding that an owner of a Neo-Nazi website had knowledge of his users harassing a Jewish realtor). Greer chooses to rely heavily on *Gersh* in making his case for an injunction.

. As will be shown in the following four sections, Greer meets each element to satisfy a preliminary injunction.

I. **Plaintiff Has a Substantial Likelihood of Success** .

Greer has a substantial likelihood of success because the facts and existing case law align in his favor. Although contributory copyright infringement is not codified, per se, courts have held since 1971 that a party can be held liable for contributory copyright infringement when he or she has knowledge of the Infringement. *Gershwin Publishing Corp. v. Columbia Artists Management*, 443 F.2d 1159 (2nd Cir. 1971). Websites with knowledge of infringing activities lose their *Safe Harbor* status when they have knowledge and contribute to the infringement. One major case that helps support Plaintiff is the case of *A&M Records v. Napster, Inc.* (2001). The 9th Circuit in *Napster* found that the streaming service was liable for contributory copyright infringement because it allowed for files to be n  uploaded and downloaded from its site. As is the case in Greer's situation, Defendant Moon has allowed for Greer's copyrighted and private files to be uploaded and downloaded from Moon's site.

Additionally to Moon having constructive knowledge with the design of his website and its  ability for file sharing and downloading, Moon has defiantly refused Greer's DMCA request to have his works removed and then in turn, uploading Greer's request for it to be mocked. This establishes actual knowledge. *Religious Technology Center v. Netcom On-Line Communications,* 907 F. Supp. 1361 (N.D. California 1995). Both theories of actual and constructive knowledge would substantially find Moon liable for infringement.

In relation to the harassment and defamation claims, Moon again has knowledge of the acts, even if he isn't entirely doing the acts himself, although Greer presented evidence in his Complaint that Moon was interacting in the commentary and doing his own YouTube shows about Greer. Again, Greer relies on *Gersh* to satisfy the knowledge element. In *Gersh*, the Defendant urged his users to not break laws in harassing Gersh, even though some of the users' conduct was illegal. This mirrors the instant case where Moon puts up decorative disclaimers, but has knowledge of harassing acts, such as knowing that his users post Greer's works, posting

5

pictures of videos and pictures of Greer to be mocked. Moon also is aware that the contact information for Greer is on his site, such as emails, phone numbers and social media handles, thus he would be aware of users potentially contacting Greer. He indirectly allowed for the harassment to happen.  Moon gives "substantial assistance" by running a site meant to mock and degrade others. *Id. (*Citing case law that held one can be liable when they are aware of another's conduct and gives assistance, directly or indirectly. The Court held that running a site constituted as assistance).

Interestingly, *Gersh* never touched on the *CDA,* however, the *Communications Decency Act* should not bar the non-copyright claims because the *CDA* is outdated and never intended for hate sites to flourish. If Moon's site was not designed to showcase those he deems to be weird and did not allow for his users to post about and harass Greer, then Moon could possibly escape liability. But since Moon built his site to make fun of "mush-mouthed autistic people" (Greer isn't autistic) and others, and he participates in and monitors his site, Greer sees no reason why the *CDA* should protect Moon. There is a case that supports this argument: *Blumenthal v. Drudge,* 992 F. Supp. 44 (D.D.C. 1998). In *Blumenthal,* the Court held that if AOL, the website, had participated in the content, it could be liable, but since it only carried the story, it wasn't liable. *Id.* at 50. On the contrary, Moon has helped with the defamation and harassment by engaging in the commentary, going onto shows, publishing Greer's notices.

Many critics have called for the *CDA* to be amended to include liability to ISPs for tort claims in the same way common law treats traditional publishers. *Limiting Tort Liability for Online Third Party Content Under Section 230 of the Communications Decency Act.* Friedman & Buono. (2000). Having a difference between print and online publisher liability, creates a system that is hard to justify, especially when the online publisher is actively involved with editorializing his site. *Zeran v. AOL and the Effect of Section 230 of the Communications Decency Act Has Upon Liability for Defamation on the Internet.* Sheridan. (1997). Even former

workers from large tech companies like Google have referred to the *CDA* as an "outdated loophole". *The 1996 Law that Made the Web is in the Crosshairs.* Fast Company. (2018). (https://www.fastcompany.com/90273352/maybe-its-time-to-take-away-the-outdated-loophole-that-big-tech-exploits). The point is clear: the *Communications Decency Act* is outdated and should not be held to protect Moon.

Because of these arguments, Greer believes he has a substantial likelihood of success at winning this case.

## II. **Plaintiff Will Suffer Irreparable Injury Without the Injunction**

As stated, Plaintiff receives harassing messages weekly, in the form of emails, phone calls and social media. The most recent case of harassment against Greer was from a person who said he was from Moon's site. Greer anticipates for these attacks to multiply because of this lawsuit. The users on Moon's site feel very passionate about his site and feel very passionate about wanting to harass and tarnish Greer in every way possible. Greer does not understand it, but he would be harmed if this injunction were not granted for the reasons listed and explained in his Complaint.

Further, Plaintiffs copyright have been infringed and misused by Defendants. Greer feels the effects from it. He hasn't been able to market or receive money for the misuse. Greer would be harmed by the works continuing to be abused.

However, Greer would ask that an injunction forcing all pages and content be removed of Greer, as he fears an outright injunction on the entire site would result in retaliatory measures by users on Moon's site, which has been demonstrated.

## III. **The Injunction Will Not Substantially Injure Others**

Defendant Moon in times past on his website has asked for donations to help keep his site a float, which therefore shows he does not have a financial investment in his site or benefits from any financial return, but rather he feels he is providing a service and a forum to harass and

showcase those he deems to be weird and eccentric. Inconveniencing the trolls from having a section to harass Plaintiff on, would not injure them. Their First Amendment rights do not give them the right to dump everything about Plaintiff and stalk his every move.

The First Amendment gives people the right to state unflattery and unkind things about another. *Snyder v. Phelps,* 580 F. 3d 206 (2011). However, as shown in his Complaint, the First Amendment does not protect harassment, stalking and copyright infringement because that is not speech, but rather conduct. *United States v. Ackell* (1st Cir. 2018). *Gersh* even touched on First Amendment issues, finding that ongoing tortious activities are not protected by free speech and that the site owner and his users speech and actions became one.

## IV. **The Injunction Furthers the Public Interest**

As stated in the Complaint, others have fallen victim to Kiwi Farms. Three women have killed themselves because of the harassment. Some of Moon's users have been involved in violent acts, including a New Mexico school shooting. Moon was embroiled in controversy in 2019 when he went head-to-head with the New Zealand government in refusing to turn over information about his users. *Owner of Notorious 8Chan Site in Bid to Deflect Blame for role in Christchurch mosque terror attacks.* New Zealand Herald (2018). So much harm has stemmed from this site, to Greer and to others, that it would be in the public interest for the injunction to be granted.

## Conclusion

Plaintiff, after meeting the four elements of a preliminary injunction, moved this Court to allow for the injunction to be granted.

## Request for Injunction

Greer requests that all over 1200 threads on Greer, which includes his copyrights, pictures, videos, private and public information, be removed from Kiwi Farms and wikis that Moon manages. Greer further requests that this Court order a restraining order prohibiting Moon

8

from allowing any of his users to create new threads or any posts that would link Greer to Kiwi

Farms.

If the Court deems it necessary for the public interest, Greer requests that the website

Kiwi Farms be frozen and cease from operating for the duration of this lawsuit.


Respectfully

DATED:  September 13th, 2020

Respectfully submitted,

By:

Russell Greer
Pro Se Litigant
/rgreer/

Ju